UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JUAN SANCHEZ, OSCAR MARTINEZ,　　　　:
MIGUEL ANGEL VASQUEZ BACA,　　　　　:　　　REPORT AND
CARLOS BERNAL, ARTILES DEYVI,　　　　:　　　RECOMMENDATION
BANNY RAMOS and ELGAR CASTILLO,　　　:
individually and on behalf of all others similarly　:　　19-CV-04524 (KAM) (PK)
situated　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiffs,　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　-against-　　　　　　:
　　　　　　　　　　　　　　　　　　:
HYPER STRUCTURE CORP., and　　　　　:
MOHAMMAD RAHMAN and WILLIE　　　　:
TRESCLY, as individuals　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendants.　:

------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

　　　Juan Sanchez ("Sanchez"), Oscar Martinez ("Martinez"), Miguel Angel Vasquez Baca ("Vasquez Baca"), Carlos Bernal ("Bernal"), Deyvi Artiles ("Artiles")[1], Banny Ramos ("Ramos"), and Elgar Castillo ("Castillo" and collectively, "Plaintiffs") brought this action against Hyper Structure Corp. ("Hyper Structure"), Mohammad Rahman ("Rahman"),[2] and Willie Trescly ("Trescly" and collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*  (*See* "Compl.", Dkt. 1.) Plaintiffs entered into a settlement agreement with Defendants Hyper Structure and Rahman, pursuant to which the case against those defendants was dismissed on October 7, 2020.  (Dkts. 26, 27.)

---

[1] Plaintiff Deyvi Artiles is listed as "Artiles Deyvi" in the case caption and the Complaint, but refers to himself as "Deyvi Artiles" in his Declaration.  (Dkt. 51-5.)  I, therefore, refer to him as "Artiles."

[2] Defendant Rahman is also known as and has appeared in this case as Sasha Khan and Sahel Khan.  (*See, e.g.*, Dkt. 32-1 at 5, 38.)  He is referred to as "Rahman" for consistency with Plaintiffs' moving papers.

On August 8, 2022, Plaintiffs moved for default judgment against Defendant Trescly. (The "Motion," Dkt. 50.)[3] The Honorable Kiyo A. Matsumoto referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted, except as to the amounts awarded, as detailed below.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background

The following facts are taken from the Complaint, the Affirmation of Roman Avshalumov ("Avshalumov Aff.," Dkt. 51) and supporting exhibits, the Declarations of Oscar Martinez ("Martinez Decl.," Ex. E to the Avshalumov Aff. ("Ex. E") at 1-6, Dkt. 51-5 (all references to ECF pagination)), Elgar Castillo ("Castillo Decl.," Ex. E at 7-9), Deyvi Artiles ("Artiles Decl.," Ex. E at 10-12), Carlos Bernal ("Bernal Decl.," Ex. E at 13-15), Banny Ramos ("Ramos Decl.," Ex. E at 16-18), Miguel Angel Vasquez Baca ("Vasquez Baca Decl.," Ex. E at 19-21), and Juan Sanchez ("Sanchez Decl.," Dkt. 56-1), and the Affidavit of Plaintiffs' Process Server (Dkt. 57) and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

### A. *The Defendants*

Hyper Structure is a New York corporation with its principal executive office in Brooklyn, New York, and "an annual gross volume of sales of not less than $500,000.00" during the time covered by the Complaint. (Compl. ¶¶ 22-23, 41.) Rahman is the Chief Executive Officer, owns and/or operates, is an agent of, and exercises power over various work and employment decisions at Hyper Structure. (Compl. ¶¶ 24-30.)

---

[3] The Complaint also asserted allegations related to a collective action, but the Motion only seeks default judgment for the named Plaintiffs.

Trescly is a foreman and supervisor for Hyper Structure, who, along with Rahman, was responsible for setting Plaintiffs' pay and determining the job sites where Plaintiffs would work. (Compl. ¶¶ 31-33.)  Trescly supervised Plaintiffs at job sites, determined their start and end times, instructed them on what work to perform, told Plaintiffs he would pay them, and had the power to terminate Plaintiffs.  (Compl. ¶¶ 34-38.)

### B. *Plaintiffs' Allegations*

Plaintiffs were all employed by Defendants from February 2019 through March 2019 to perform construction, carpentry, and other miscellaneous duties.  (Compl. ¶¶ 42, 48-49, 55-56, 62-63, 69-70, 76-77, 83-84, 90-91; Martinez Decl. ¶ 1; Castillo Decl. ¶ 1; Artiles Decl. ¶ 1; Bernal Decl. ¶ 1; Ramos Decl. ¶ 1; Vasquez Baca Decl. ¶ 1; Sanchez Decl. ¶¶ 3-4.)  They regularly worked eight hours a day, six days per week, for a total of 48 hours per week.[4]  (*Id.* ¶¶ 43-44, 50, 57, 64, 71, 78, 85, 92; Martinez Decl. ¶ 7; Castillo Decl. ¶ 7; Artiles Decl. ¶ 7; Bernal Decl. ¶ 7; Ramos Decl. ¶ 7; Vasquez Bac Decl. ¶ 7; Sanchez Decl. ¶¶ 7-8.)  Plaintiffs were not provided breaks.  (*Id.* ¶ 45.)

Rahman and Trescly promised Plaintiffs that they would be paid $240.00 per day of work.  (*Id.* ¶¶ 47, 51, 58, 65, 72, 79, 86, 93; Martinez Decl. ¶ 8; Castillo Decl. ¶ 8; Artiles Decl. ¶ 8; Bernal Decl. ¶ 8; Ramos Decl. ¶ 8; Vasquez Baca Decl. ¶ 8; Sanchez Decl. ¶¶ 9-10.)  Plaintiffs were never paid for any of their work.  (*Id.* ¶¶ 52-54, 59-61, 66-68, 73-75, 80-82, 87-89, 94-96; Martinez Decl. ¶ 10-12; Castillo Decl. ¶ 9-10; Artiles Decl. ¶ 9-10 Bernal Decl. ¶ 9-10; Ramos Decl. ¶ 9-10; Vasquez Baca Decl. ¶ 9-10; Sanchez Decl. ¶ 9-10.)

Defendants did not keep payroll records.  (Compl. ¶ 98.)  They also "failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay,

---

[4] Martinez, Castillo, Artiles, Bernal, Ramos and Vasquez Baca state that they worked from 7:00 am to 3:00 pm each day, which is exactly eight hours per day, for a total of 48 hours per week.  Sanchez states that he worked approximately from 7:00 a.m. to 3:30 p.m. "or later," but also calculates that he "[t]herefore… was regularly required to work for Defendants for a total of approximately forty-eight (48) hours per week."  (Sanchez Decl. ¶¶ 7-8.)

regular pay day, and such information as required by NYLL § 195(1)" *(Id.* ¶ 146) or "wage statements upon each payment of wages, as required by NYLL § 195(3)."  *(Id.* ¶ 149.)

## II.    Procedural Background

Plaintiffs filed the Complaint on August 6, 2019.  (Dkt. 1.)  The Complaint asserts eight causes of action on behalf of the named Plaintiffs: (1) failure to pay overtime wages under the FLSA in violation of 29 U.S.C. § 207(a) (Compl. ¶¶ 112-18); (2) failure to pay overtime wages in violation of NYLL § 198(1-a) (*id.* ¶¶ 119-22); (3) unpaid wages under the FLSA in violation of 29 U.S.C. § 206(a) (*id.* ¶¶ 123-26); (4) unpaid wages in violation of "New York Labor Law Article 6" (*id.* ¶¶ 127-30); (5) failure to pay minimum wages under the FLSA in violation of "29 U.S.C. §§201, 202 and 203" (*id.* ¶¶ 131-38); (6) failure to pay minimum wages in violation of NYLL § 652 (*id.* ¶¶ 139-44); (7) violations of the notice and recordkeeping requirements of NYLL § 195(1) (*id.* ¶¶ 145-47); and (8) violation of the wage statement requirements of NYLL § 195(3) (*id.* ¶¶ 148-50).  Hyper Structure and Rahman filed an answer on October 25, 2019.  (Dkt. 8.)

Plaintiffs effected service on Trescly on September 6, 2019 by leaving a copy of the summons at his actual place of business with Defendant Rahman (described as his co-worker Mohammad Rahman) and mailing a copy marked "Personal & Confidential" to his actual place of business by first class mail on September 9, 2019.  (Dkt. 17; Dkt. 51-2; Dkt. 57.)

After Trescly failed to answer or otherwise appear in this case, Plaintiffs requested a certificate of default against him (Dkt. 18), which the Clerk entered on August 24, 2020.[5]  (Dkt. 19.)

Plaintiffs filed the Motion on August 8, 2022.[6]  (Dkt. 50.)

---

[5] Due to an error in the proposed certificate of default and, therefore, the initial certificate of default, a corrected version was issued on January 24, 2023 and mailed to Trescly by the Clerk's Office.  (Dkt. 54.)

[6] Plaintiffs filed a Motion for Default Judgment against Trescly on November 16, 2020, which was withdrawn before decision.  (First Motion for Default Judgment, Dkt. 29; Order dated Sept. 14, 2021.)

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The plaintiff must demonstrate proper service of the summons and complaint.  *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).  The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.  The court first has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Next, a court "may…assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted).

In addition, the court must determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84.  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84.  However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27,

2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction

### A.    *Subject Matter Jurisdiction*

The Court has original jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.    *Service on the Defendants*

Plaintiffs served Trescly by delivering a copy of the Summons and Complaint to a person of suitable age and discretion at Trescly's actual place of business and then mailing a copy to his actual place of business via first class mail.  (Dkt. 17; Dkt. 51-2; Dkt. 57.)  Service on Trescly was, therefore, proper.  N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e).

### C.    *Personal Jurisdiction*

"[S]erving a summons … establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ.

P. 4(k)(1)(A).)

New York State has specific jurisdiction over any individual who "'transacts any business within the state' so long as 'the cause of action arises from that transaction.'" *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Licci ex rel. Licci*, 673 F.3d at 60). Trescly supervised Plaintiffs at job sites in New York. (Compl. ¶¶ 30, 34-37.) The Court, therefore, has personal jurisdiction over Trescly.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following in support of the Motion: Notice of Motion (Dkt. 50); a memorandum of law in support of the Motion ("Pl. Mem.," Dkt. 52); a copy of the certificate of default against Trescly (Dkt. 51-3); a copy of the Complaint (Dkt. 51-1); a proposed default judgment order (Dkt. 51-6); proof of mailing the Motion to Trescly (Dkt. 53), and an affirmation that Trescly is not an infant, in the military, or an incompetent person. (Avshalumov Aff. ¶¶ 8-9.) By filing these documents, Plaintiffs have complied with the requirements of Local Civil Rules 7.1 and 55.2.

## IV.    Liability under the FLSA and NYLL

### A.    *Employment Relationship Under the FLSA*

The FLSA is to be "construed…liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted). To plead a cause of action under the FLSA, plaintiffs must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiffs are employees within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-CV-01423 (CBA) (PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019). Courts in the Second

Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

        1.    <u>Whether Trescly is an Employer</u>

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield*, 537 F.3d at 142). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT) (RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

A defendant that meets the criteria for either individual or enterprise coverage is an employer under the FLSA. *See Rowe*, 2019 WL 4395158, at *4. The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Id.* Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and … whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities

may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiffs allege that Hyper Structure is a corporation that "has had employees engaged in commerce or in the production of goods for commerce…[who] handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person" and "has had an annual gross volume of sales of not less than $500,000.00" at all times covered by the Complaint. (Compl. ¶ 41.)    Although these allegations merely repeat the statutory elements of the enterprise coverage test, they are sufficient to establish that Defendants were required to comply with the FLSA's minimum wage and overtime requirements.    Because Plaintiffs were engaged in, among other tasks, construction and carpentry work, it is reasonable to infer that they handled tools and materials that were moved via interstate commerce.  *See Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD) (JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (court can "infer[ ] the requisite interstate commerce connection under [a] sensible approach"); *see also Wing Kwong Ho v. Target Const. of NY, Corp.*, No. 08-CV-4750 (KAM) (RER), 2011 WL 1131510, at *8 (E.D.N.Y. Mar. 28, 2011) (enterprise coverage test met because plaintiff used tools and construction materials that "undoubtedly traveled in interstate commerce").

With respect to whether an individual is an employer, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam).  "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109.  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.  The analysis of whether an individual is an

"employer" is guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. The factors that the Court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d at 139 (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

Plaintiffs allege that Trescly, as a foreman and supervisor for Hyper Structure, hired Plaintiffs, had the power to terminate Plaintiffs, supervised Plaintiffs at job sites, instructed them on what work to perform, and told Plaintiffs he would pay them. (Compl. ¶¶ 31-38; Martinez Decl. ¶¶ 2-6; Castillo Decl. ¶¶ 2-6; Artiles Decl. ¶¶ 2-6; Bernal Decl. ¶¶ 2-6; Ramos Decl. ¶¶ 2-6; Vasquez Baca Decl. ¶¶ 2-6; Sanchez Decl. ¶¶ 3,5.) Trescly was also jointly responsible with Rahman for determining Plaintiffs' pay and determining the job sites they would report to each day. (Compl. ¶¶ 31-32.) Because these allegations closely track the *Carter* factors, they establish that Trescly was Plaintiffs' employer. *See, e.g.*, *Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085 (ARR) (JO), 2019 WL 783033, at *7 (E.D.N.Y. Feb. 21, 2019) (defendant who met first three *Carter* factors but did not maintain records nevertheless "was unquestionably" plaintiff's employer); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d at 140 (finding that

individual defendant was employer where "there is no evidence that [defendant] was involved in maintaining employment records. But that this fourth factor is not met is not dispositive.").

### 2.    Whether Plaintiffs were Employees

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiffs all assert that they were employed by Defendants from February 2019 through March 2019. (Compl. ¶¶ 42, 48-49, 55-56, 62-63, 69-70, 76-77, 83-84, 90-91; Martinez Decl. ¶ 1; Castillo Decl. ¶ 1; Artiles Decl. ¶ 1; Bernal Decl. ¶ 1; Ramos Decl. ¶ 1; Vasquez Baca Decl. ¶ 1; Sanchez Decl. ¶¶ 3, 9.) These allegations establish that Plaintiffs were employees under the FLSA.

### 3.    Whether any FLSA exemption applies

Finally, Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014). For example, "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advance knowledge in a field of science or learning" are not covered by the FLSA. *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1)). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

None of the FLSA's exceptions apply to Plaintiffs, who were construction and carpentry employees. *See Vega v. K&C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *3 (E.D.N.Y. Aug. 28, 2018), *R&R adopted*, 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) (FLSA exemptions do not include carpenters).

The FLSA therefore applies to the instant dispute.

### B.    Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with Trescly falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, Trescly is Plaintiffs' employer within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### C.    Unpaid and Minimum Wage Claims

Plaintiffs have asserted separate causes of action for "unpaid" and "minimum" wages under both the FLSA and the NYLL. However, in their claims for unpaid wages, Plaintiffs cite to the minimum wage provision of the FLSA, 29 U.S.C. § 206(a), and the NYLL "Article 6" generally. Therefore, I construe Plaintiffs' claims for "unpaid" wages as alleging that they were not paid any wages at all and include it in the analysis for whether they were paid at or above the minimum wage rate.

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the

highest measure of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Jan. 20, 2023).

Under New York law, the minimum wage for "large employers" in New York City starting on December 31, 2018 was $15.00. NYLL § 652(1)(a)(i). The minimum wage for New York City businesses with ten or fewer employees was $13.50 per hour from December 31, 2018 through December 31, 2019. NYLL § 652(1)(a)(ii).

Plaintiffs do not provide information regarding the size of Defendant Hyper Structure. However, Plaintiffs were never paid *any* wages. (*Id.* ¶¶ 52-54, 59-61, 66-68, 73-75, 80-82, 87-89, 94-96; Martinez Decl. ¶ 10-12; Castillo Decl. ¶ 9-10; Artiles Decl. ¶ 9-10 Bernal Decl. ¶ 9-10; Ramos Decl. ¶ 9-10; Vasquez Baca Decl. ¶ 9-10; Sanchez Decl. ¶ 10.) Because Plaintiffs were paid $0 per hour, they have established Defendant's liability for failure to pay minimum wages under both the FLSA and the NYLL.

In addition to requiring payment of minimum wages, the NYLL provides for recovery of unpaid promised wages under Article 6, Section 191. *See, e.g., Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018) *R&R adopted*, Sept. 25, 2018 (*see* Docket Order dated Sept. 25, 2018) ("Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to

damages under NYLL § 198.") (collecting cases); *Calle v. Yoneles Enterprises, Inc.*, No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017), *R&R adopted*, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018) ("Under the NYLL, however, a plaintiff can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds the minimum wage."); *Chun Jie Yin v. Kim*, No. 07CV-1236 (DLI) (JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008); *Shin Won Kang*, No. 08-CV-4848 (SLT) (JMA), 2011 WL 1674554 (E.D.N.Y. Jan. 28, 2011); *but see, e.g.*, *Ansoralli v. CVS Pharmacy, Inc.*, No. 16-CV-1506 (CBA) (JRR), 2017 WL 8790986, at *5-8 (E.D.N.Y. Sept. 29, 2017) (concluding that Section 191 does not provide for recovery of unpaid wages above the minimum wage).

Because Plaintiffs allege that they were promised $240 per day of work by Trescly (Compl. ¶¶ 47, 51, 58, 65, 72, 79, 86, 93; Martinez Decl. ¶ 8; Castillo Decl. ¶ 8; Artiles Decl. ¶ 8; Bernal Decl. ¶ 8; Ramos Decl. ¶ 8; Vasquez Baca Decl. ¶ 8; Sanchez Decl. ¶ 9), they are entitled to recover their unpaid promised wages under NYLL § 191.

### D.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

All Plaintiffs allege that they worked more than 40 hours per week and were never paid

overtime. (Compl. ¶¶ 43-44, 50, 52-54, 57, 59-61, 64, 66-68, 71, 73-75, 78, 80-82, 85, 87-89, 92, 94-96; Martinez Decl. ¶¶ 7, 10-12; Castillo Decl. ¶¶ 7, 9-10; Artiles Decl. ¶¶ 7, 9-10; Bernal Decl. ¶¶ 7, 9-10; Ramos Decl. ¶¶ 7, 9-10; Vasquez Baca Decl. ¶¶ 7, 9-10; Sanchez Decl. ¶¶ 8, 10.)

These allegations establish Trescly's liability for failure to pay all Plaintiffs overtime wages pursuant to both the FLSA and the NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL).

### E.    *Wage Notice and Wage Statement Claims*

Plaintiffs also alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (Compl. ¶¶ 76-83.)

#### 1.    Wage Notice Claims

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.

Plaintiffs never received any wage notice at the time of hiring. (Compl. ¶ 146.) Defendant therefore violated Section 195(1)(a).

#### 2.    Wage Statement Claims

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Plaintiffs allege that "Defendants failed to provide Plaintiffs with wage statements upon each payment of wages." (Compl. ¶ 149.) Plaintiffs also allege that they never received any payment of

wages even though the NYLL requires that manual workers such as Plaintiffs "shall be paid weekly."[7] NYLL § 191(1)(a). Simply because Trescly ignored the requirement to pay timely wages does not relieve him of liability for failure to provide wage statements. *See, e.g.*, *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014) (awarding wage statement damages where plaintiff was never paid).

Therefore, Plaintiffs' allegations establish Trescly's liability for violations of NYLL § 195(3).

## V.    Damages

A default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The court may conduct a hearing to determine damages. Fed. R. Civ. P. 55(b)(2). On a motion for default judgment, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3.

### A.    *Unpaid and Minimum Wage Damages*

As discussed above, the NYLL provides Plaintiffs greater opportunity for recovery than the FLSA during the time of Plaintiffs' employment. In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), the NYLL will apply, since the NYLL permits the recovery of "the full amount of wages owed, not just the statutory minimum wage." *Chun Jie Yin*, 2008 WL 906736, at *4.

Plaintiffs were promised $240.00 for each 8-hour day of work. This results in an hourly promised rate of $30.00.

---

[7] None of the exceptions under this section apply to Plaintiffs.

Each Plaintiff alleged that he was employed in February and March of 2019. Although Plaintiffs do not make specific allegations about the exact days within that 59-day period they worked, they provided damages calculations based on eight full weeks of employment, *i.e.*, 57 days of work. (*See* Damages Calculations, Dkt. 51-4.) This appears to be a reasonable approximation of Plaintiffs' workdays, and I adopt this method of calculation. The amounts due for their unpaid wages are calculated using their promised wages as their regular rates of pay.

Each Plaintiff was owed $1,440.00 per week at their regular rate of pay, *i.e.*, $30.00 per hour, eight hours a day, six days a week. For the eight weeks they worked, each Plaintiff is owed a total of $11,520.00 in unpaid regular wages.

Accordingly, I respectfully recommend that Sanchez, Martinez, Vasquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded damages in the amount of $11,520.00 in unpaid regular wages under the NYLL.

## B.    *Overtime Damages*

Both the NYLL and the FLSA provide for overtime pay at one and one-half times the employee's "regular rate of pay." *Nakahata*, 723 F.3d at 200. Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the [Plaintiff's] salary by the number of hours which the salary is intended to compensate." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quoting 29 C.F.R. § 778.113). Similarly, under the NYLL, for non-hospitality industry workers who are paid hourly, the "regular rate" is the regular hourly rate; if paid by salary, the regular rate is the total weekly salary divided by the number of hours worked. NYLL § 142-2.16. Because Plaintiffs were not paid an hourly rate, but were promised a daily rate, I consider them to be paid by salary, with an effective hourly rate of $30.00.

Each Plaintiff worked 48 hours per week. For each hour over 40, they are entitled to 1.5 times their regular rate of $30.00. Therefore, for the 8 hours each week that they worked overtime, Plaintiffs

are entitled to an overtime premium of $15.00, that is, $120.00 per week.  For their eight weeks of employment, Plaintiffs are owed a total of $960.00 in overtime pay.[8]

Accordingly, I respectfully recommend that Sanchez, Martinez, Vasquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded $960.00 in unpaid overtime wages.

### C.    Wage Notice and Wage Statement Damages

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000.  NYLL § 198(1-b).

Plaintiffs worked six days per week for eight weeks, a total of 48 workdays.  (Compl. ¶¶ 42, 48-49, 55-56, 62-63, 69-70, 76-77, 83-84, 90-91; Martinez Decl. ¶ 1; Castillo Decl. ¶ 1; Artiles Decl. ¶ 1; Bernal Decl. ¶ 1; Ramos Decl. ¶ 1; Vasquez Baca Decl. ¶ 1; Sanchez Decl. ¶ 3, 6, 9; Damages Calculations.)  Accordingly, I respectfully recommend that Sanchez, Martinez, Basquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded $2,400.00 in damages under Section 195(1).

Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000.  NYLL § 198(1-d).

Because each Plaintiff worked for 20 days or more, they are entitled to the statutory maximum amounts.  Accordingly, I respectfully recommend that Sanchez, Martinez, Vasquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded $5,000.00 in damages under Section 195(3).

### D.    Liquidated Damages

Under the FLSA, an employee may recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation.  29 U.S.C. § 216(b).  Under the NYLL, an employee may recover liquidated damages equal to the full amount of the underpayment of wages.

---

[8] Plaintiffs indicated in their damages calculations that they believe they are each owed $2,880.00 in overtime. (Damages Calculations.)  They reached this figure, however, by multiplying the total overtime hours by $45.00, or 1.5 times the regular rate of pay, effectively double-counting the regular minimum wage damages that were already calculated above.

NYLL § 198(1-a). This includes liquidated damages on unpaid wages above the minimum wage and overtime compensation. *See Cavalotti*, 2018 WL 5456654, at *19 (permitting plaintiff to recover liquidated damages under the NYLL for unpaid wages at the agreed-upon rate and unpaid overtime compensation). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Because Trescly did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Plaintiffs may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount. *See Charvac*, 2015 WL 5475531, at *4.

I apply the NYLL and respectfully recommend that Sanchez, Martinez, Vasquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded $12,480.00 in liquidated damages.

### E.    Post-Judgment Interest

Plaintiffs also seek post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, I recommend that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### F.    Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the

judgment still pending after ninety days, as provided for at NYLL § 198(4).  However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).  This award is therefore mandatory, regardless of whether Plaintiff requests it or not.

The increase applies only to damages awarded under state law.  *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.,* No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL).  Accordingly, Plaintiffs' damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.[9]

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted.  Specifically, I find that Defendant Trescly failed to pay Plaintiffs minimum wage, failed to pay their promised wages, failed to pay them at an overtime time rate for hours worked over forty per week, and failed to provide Plaintiffs with wage notices or wage statements.  I respectfully recommend that Plaintiffs Sanchez,

---

[9] Plaintiffs requested pre-judgment interest, costs, and attorneys' fees in the Complaint (Compl. at 16), but they stated that they are not seeking these forms of relief in the Motion.  (Dkt. 56 at 2; Pl. Mem. at 2 ("Plaintiffs seek no other form of damages from Defendant WILLIE TRESCLY within this motion, other than the above sum, and any other form of relief not therein included (e.g., pre-judgment interest, costs, fees, etc.) is not herein sought.").)  Therefore, I respectfully do not recommend awarding pre-judgment interest, costs, or attorneys' fees.

Martinez, Vasquez Baca, Bernal, Artiles, Ramos, and Castillo each be awarded damages under the NYLL as follows:

| Plaintiff | Unpaid Wages | Unpaid Overtime | Statutory Damages for Wage Notice Claims | Statutory Damages for Wage Statement Claims | Liquidated Damages | Total |
|---|---|---|---|---|---|---|
| Sanchez | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Martinez | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Vasquez Baca | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Bernal | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Artiles | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Ramos | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| Castillo | $11,520.00 | $960.00 | $2,400.00 | $5,000.00 | $12,480.00 | $32,360.00 |
| | | | | | Total: | 226,520.00 |

I further recommend that post-judgment interest be awarded, calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961, and the fifteen-percent increase penalty be imposed if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant Trescly forthwith and file proof of service on the docket by **February 28, 2023**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____
PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 24, 2023